,kl;.'/UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


VALERIE ANN BARBOUR,

        Plaintiff,

v.                                       Case No. 1:20-cv-317

                                             Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant,

_____/

**OPINION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her application for disability insurance benefits (DIB).

        Plaintiff filed an application for DIB on May 8, 2017, alleging a disability onset date of February 24, 2017. PageID.72. Plaintiff identified her disabling conditions as: arthritis in hands, knee, foot, and back; bone spurs; acid reflux; and bulging discs in back. PageID.224. Prior to applying for DIB, plaintiff completed the 12th grade and had past employment as a hose inspector ("rubber goods inspector tester"), packing (packaging) line worker[1], and assembler of small parts. PageID.78-79, 225. An ALJ reviewed plaintiff's application de novo and entered a written decision denying benefits on April 9, 2019. PageID.72-79. This decision, which was later

---

[1] The Court notes that the ALJ refers to plaintiff's past work as both "packing line worker" and "packaging line worker." PageID.78.

approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.       LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

2

of not less than twelve months.  *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step

analysis:

> The Social Security Act requires the Secretary to follow a "five-step
> sequential process" for claims of disability.  First, plaintiff must demonstrate that
> she is not currently engaged in "substantial gainful activity" at the time she seeks
> disability benefits.  Second, plaintiff must show that she suffers from a "severe
> impairment" in order to warrant a finding of disability.  A "severe impairment" is
> one which "significantly limits . . .  physical or mental ability to do basic work
> activities."  Third, if plaintiff is not performing substantial gainful activity, has a
> severe impairment that is expected to last for at least twelve months, and the
> impairment meets a listed impairment, plaintiff is presumed to be disabled
> regardless of age, education or work experience.   Fourth, if the plaintiff's
> impairment does not prevent her from doing her past relevant work, plaintiff is not
> disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent
> her from doing her past relevant work, if other work exists in the national economy
> that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations

caused by her impairments and the fact that she is precluded from performing her past relevant

work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir.

2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a

significant number of jobs in the economy that accommodate the claimant's residual functional

capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant

is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis

v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.    ALJ's DECISION

Plaintiff's application for DIB failed at the fourth step of the evaluation.  At the

first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since her

alleged onset date of February 24, 2017, and met the insured status requirements of the Social

3

Security Act through March 31, 2020.  PageID.74.  At the second step, the ALJ found that plaintiff

had severe impairments of: osteoarthritis of the left knee, bursitis of the left hip, and degenerative

disc disease with radiculopathy.  PageID.74.  At the third step, the ALJ found that plaintiff did not

have an impairment or combination of impairments that met or equaled the requirements of the

Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  PageID.75.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has
> the residual functional capacity to perform light work as defined in 20 CFR
> 404.1567(b) except the claimant can occasionally balance, climb ramps/stairs or
> stoop; cannot climb ladders, ropes, or scaffolds, kneel, crouch, or crawl; cannot
> tolerate exposure to unprotected heights.

PageID.75.

The ALJ also found that plaintiff is capable of performing her past relevant work

as a rubber goods inspector tester, packing (packaging) line worker[2], and assembler of small parts.

PageID.78-79.   This work does not require the performance of work-related activities precluded

by plaintiff's residual functional capacity (RFC).  Accordingly, the ALJ determined that plaintiff

has not been under a disability, as defined in the Social Security Act, from February 24, 2017 (the

alleged onset date) through April 9, 2019 (the date of the decision).  PageID.79.

## III.    DISCUSSION

Plaintiff has raised four errors on appeal.

**1. The ALJ failed to apply SSR 02-1p in evaluating the severity
of the plaintiff's obesity, as indicated by her height of 5 feet 3
inches and weight of 170 pounds (BMI=30.1).**

Plaintiff contends that the ALJ did not properly evaluate her obesity.  Defendant's

regulations consider a person to be obese with a body mass of index ("BMI") of 30.  *See Morin v.*

---

[2] The Court notes that the ALJ refers to plaintiff's past work as both "packing line worker" and "packaging line
worker."  PageID.78.

*Commissioner of Social Security*, 259 F. Supp. 3d 678, 684 (E.D. Mich. 2017). While obesity is no longer a listed impairment, the Commissioner addresses the effects of obesity on a claimant's ability to perform work-related activities. In this regard, Social Security Ruling (SSR 02-1p) provides guidance, stating in pertinent part:

> [Even] though we deleted listing 9.09, we made some changes to the listings to ensure that obesity is still addressed in our listings. In the final rule, we added paragraphs to the prefaces of the musculoskeletal, respiratory, and cardiovascular body system listings that provide guidance about the potential effects obesity has in causing or contributing to impairments in those body systems. See listings sections 1.00Q, 3.00I, and 4.00F. The paragraphs state that we consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. They also instruct adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.

SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002).[3]

While SSR 02-1p provides guidance for the ALJs in evaluating a claimant's obesity, it does not create a separate procedure requiring the Commissioner to consider obesity in every case. As the Sixth Circuit stated in *Bledsoe v. Barnhart*, 165 Fed. Appx. 408 (6th Cir. 2006):

> Social Security Ruling 02-01p does not mandate a particular mode of analysis. It only states that obesity, in combination with other impairments, "may" increase the severity of the other limitations. It is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants.

*Bledsoe*, 165 Fed. Appx. at 411-12.

The ALJ stated that he considered the entire record. PageID.54, 56. While the ALJ did not explicitly address plaintiff's obesity, that condition was not an issue in this case. Plaintiff's

---

[3] The Court notes that SSR 19-2p (effective May 20, 2019) rescinds and replaces SSR 02-1p for new applications filed on or after its effective date. *See* SSR 19-2p fn. 14. Because plaintiff filed his application in 2016, SSR 02-1p applies to this review of the ALJ's decision.

application did not identify obesity as an impairment which interfered with her ability to work. PageID.224.  Upon initial review of plaintiff's medical records, DDS medical consultant Shahida Mohiuddin, M.D. noted that plaintiff had a self-reported height of 64 inches, a self-reported weight of 165.0 pounds, a BMI of 28.3, and no "special indications" related to her height, weight, or BMI. PageID.114. At the time of the administrative hearing on February 25, 2019, plaintiff was 64 years old.  PageID.89.  Plaintiff testified that she last worked in February 2017.  PageID.89.  Plaintiff testified that over the last few years she gained 20 pounds, which she attributed to depression. PageID.89, 105.  Other than that brief testimony, the issue of plaintiff's obesity was not addressed at the administrative hearing.   Plaintiff contends that her "BMI was above 30 most of the time she was under treatment" and that her doctors discussed how the obesity was adversely affecting plaintiff by increasing her weight bearing joint.  Plaintiff's Brief (ECF No. 17, PageID.517-518). While Kimberly McLean, D.O. counseled plaintiff "on the importance of stress reduction, physical activity, and weight loss related to slowing down the progression of osteoarthritis" (PageID.301), the doctor did not mention plaintiff's obesity as a medical impairment.  Accordingly, the Court finds no error in the ALJ's decision with respect to plaintiff's obesity.

### 2. While the ALJ cited SSR 16-3p, she never actually explained how the standard was applied to the facts and circumstances of this case.

Plaintiff contends that the ALJ failed to consider all of the factors set forth in 20 C.F.R. § 404.1529(c)(3) for evaluating subjective complaints.  Plaintiff's Brief at PageID.520. Specifically, plaintiff points to medication side effects (*see* 20 C.F.R. § 404.1529(c)(3)(iv), such as drowsiness, constipation, and headaches. *Id.* at PageID.520-521. *See* 20 C.F.R. § 404.1529(c)(3)(iv) (in evaluating the intensity and persistence of a claimant's symptoms and determining the extent to which those symptoms limit a claimant's capacity for work, the

Commissioner considers various factors, including "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms"). A claimant's allegations of medication side effects must be supported by objective medical evidence. *See Essary v. Commissioner of Social Security*, 114 Fed. Appx. 662, 665-66 (6th Cir. 2004) (where plaintiff testified that she suffered from dizziness and drowsiness as a result of her medications, the ALJ did not err in finding that she suffered no side effects where her medical records contain no such reported side effects to her physicians).

Here, the ALJ considered plaintiff's claim of medication side effects, noting that she testified about side effects at the administrative hearing:

> [Plaintiff] stated she takes Flexeril and Gabapentin for her pain, and after taking such her pain decreases. She also indicated her pain medications make her sleepy. The claimant testified she naps twice per day for 30 minutes at a time and sleeps three to four hours per night.

PageID.76.  In addition, plaintiff testified that her medications cause "headaches sometimes and constipation."  PageID.105.  The ALJ's decision did not specifically address plaintiff's testimony that her medication causes headaches and constipation.  That being said, plaintiff did not point to medical records which demonstrate that she reported the alleged disabling side effects with her physicians.  Accordingly, plaintiff's claim of error is denied.

### 3. The ALJ committed reversible error in not recognizing that the plaintiff actually performed a "composite job" which entailed the duties of two jobs and in finding that she can return to the least strenuous of her past duties.

Plaintiff contends that most of her past relevant work ("PRW") was as a composite worker, that she alternated between light and medium work, and that "the ALJ only considered the light aspect of the work when determining that plaintiff could perform two of three of her PRW." Plaintiff's Brief at PaegID.523.  Plaintiff's contention is without merit.

7

To support a finding that a claimant can perform his or her past relevant work, the Commissioner's decision must explain why the claimant can perform the demands and duties of the past job as actually performed or as ordinarily required by employers throughout the national economy. *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 723-24 (W.D. Mich. 2007). *See Clendening v. Commissioner of Social Security*, 482 Fed. Appx. 93, 96 (6th Cir. 2012) ("[t]he relevant inquiry is whether [the claimant] could still perform that type of work and not necessarily the specific job that he had in the past"); 42 U.S.C. § 423(d) (2)(A) ("[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy") (emphasis added).

As an initial matter, plaintiff incorrectly refers to two of her past jobs as "composite jobs" because the jobs are generally performed at an exertional level different from the manner in which she actually performed the job. *See* Plaintiff's Brief at PageID.523. SSR 82-61 ("Past relevant work-The particular job or the occupation as generally performed") defines the term "composite jobs" as follows:

> [C]omposite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT [Dictionary of Occupational Titles ]. Such situations will be evaluated according to the particular facts of each individual case.

SSR 82-61. *See, e.g., Smith v. Commissioner of Social Security*, No. 1:14-cv-920, 2015 WL 5592793 at *3 (W.D. Mich. Sept. 22, 2015) (the Agency noted that the claimant's job driving motor homes was a composite of significant elements from two or more occupations (*i.e.*, "paint prep" and "driver, body shop") and, as such, did not have a counterpart in the DOT). Here, neither

the ALJ nor the vocational expert identified plaintiff's past relevant work as involving a "composite job."

As discussed, the ALJ found that plaintiff is capable of performing her past relevant work as a rubber goods inspector tester, packaging line worker, and assembler of small parts. PageID.78-79.  Here, the ALJ noted: that plaintiff's past work as a rubber goods inspector tester was light work, performed by her as medium work; that plaintiff's past work as an assembler of small parts was light work, performed by her as medium work; and, that plaintiff's past work as a packaging line worker was light work, performed by her as light work.  PageID.78-79, 107. Because plaintiff has the RFC to engage in light work, she can perform all of these jobs as generally performed.  Furthermore, plaintiff actually performed her past relevant work as a packaging line worker as light work.  For all of these reasons, plaintiff's claim of error is denied.

> **4. The ALJ committed reversible error in failing to find that the plaintiff's left knee instability and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the left knee meets and/or equals the criteria of Listing 1.02.**

Finally, plaintiff contends that her condition meets or equals the requirements of Listing 1.02A.  At step three, a claimant bears the burden of demonstrating that he meets or equals a listed impairment.  *See Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir. 1987).  In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments."  *Id.*  An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. § 404.1525(d).

The requirements for Listing 1.02A are as follows:

1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b .  .  .  .

In turn, § 1.00B.2.b. provides as follows:
1.00B2b. What We Mean by Inability to Ambulate Effectively

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*See* Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.

> The ALJ addressed the listings as follows:

> Individually, or in combination, the medical evidence does not document impairments of listing level severity, and no acceptable medical source has

mentioned findings equivalent in severity to the criteria of any listed impairment, individually, or in combination. I have evaluated the signs, symptoms, and laboratory findings of the claimant's severe impairments, finding that they do not meet or medically equal in severity or duration the criteria listings of 1.02, 1.04, or any other listing.

PageID.75.

While the regulations do not require an ALJ to address every listing, the ALJ should discuss a listing if the record raises a "substantial question" as to whether the claimant could qualify as disabled under that listing. *Sheeks v. Commissioner of Social Security Administration*, 544 Fed. Appx. 639, 641 (6th Cir. 2013). In contesting the ALJ's evaluation, plaintiff "must do more than point to evidence on which the ALJ could have based his finding to raise a 'substantial question' as to whether he has satisfied a listing." *Smith-Johnson v. Commissioner of Social Security*, 579 Fed. Appx. 426, 432 (6th Cir. 2014). "Rather, the claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Id*.

In this instance, the Court concludes that plaintiff has not met this burden. As discussed, the ALJ found that plaintiff had a severe impairment which affected a weight bearing joint, *i.e.*, osteoarthritis of the left knee. PageID.74. However, plaintiff has not demonstrated an "inability to ambulate effectively" as required in Listing 1.02A. Defendant notes that an orthopedic office clinic note from December 12, 2017, states that "[t]he patient is ambulating without the use of an aid and with mild limp." PageID.436. On August 2, 2018, plaintiff's physician, Natalie Kelly, M.D., noted that plaintiff had not been to physical therapy because she had to go to Maryland, advised plaintiff to schedule a physical therapy appointment, and further advised plaintiff "to exercise everyday including walking and weight bearing exercises." PageID.479-480. A later physical therapy note related to plaintiff's gait on January 3, 2019 stated:

11

> The patient ambulates with decreased weightbearing on left lower extremity [sic] has signs of antalgic gait pattern.  However she does not report any pain on weightbearing.

PageID.462.  Based on this record, the Court concludes that the ALJ did not commit error with respect to Listing 1.02A.  Accordingly, plaintiff's claim of error is denied.

## IV.   CONCLUSION

For these reasons, the Commissioner's decision will be **AFFIRMED**.  A judgment consistent with this opinion will be issued forthwith.


Dated:  September 21, 2021                                /s/ Ray Kent
                                                         United States Magistrate Judge

12